UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11-cv-132-RLV
(5:06-cr-44-RLV-CH-1)

| | |
|---|---|
| LARRY EUGENE MORRISON, )<br> )<br>　　Petitioner, )<br> )<br>　　vs. )<br> )<br>UNITED STATES OF AMERICA, )<br> )<br>　　Respondent. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (Doc. No. 1); Respondent's Motion to Dismiss, (Doc. No. 10); two Motions for Summary Judgment by Petitioner, (Doc. No. 12; 15); Petitioner's Motion for Preliminary Injunction, (Doc. No. 16); Petitioner's Motion to Compel Discovery, (Doc. No. 17), and Petitioner's Motion to Expedite, (Doc. No. 18). For the reasons stated herein, the Court will grant Respondent's Motion to Dismiss, deny all of Petitioner's motions, and dismiss Petitioner's Motion to Vacate with prejudice.

I.　　PROCEDURAL BACKGROUND

Petitioner Larry Eugene Morrison was indicted along with twelve co-defendants by the Grand Jury for the Western District of North Carolina in a 24-count Bill of Indictment on July 27, 2006. (Criminal Case No. 5:06CR44, Doc. No. 3: Indictment). Specifically, Petitioner was charged with conspiracy to possess with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); 18 counts of possession with intent to distribute at least 50 grams of methamphetamine and aiding and abetting such activity, in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2 (Counts Two

-1-

through Ten, Twelve through Fifteen, Nineteen, Twenty, Twenty-Two through Twenty-Four); and attempt to possess with intent to distribute at least 50 grams of methamphetamine and aiding and abetting such activity, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Eleven).

On September 7, 2007, Petitioner entered into a written plea agreement with the Government, agreeing to plead guilty to the conspiracy offense and to stipulate that the offense involved at least 5 kilograms but less than 15 kilograms of a mixture and substance containing a detectable amount of methamphetamine, generating a base offense level of 36. (Criminal Case No. 5:06CR44, Doc. No. 146: Plea Agreement at 1-2). As part of the plea agreement, Petitioner agreed to waive "all rights to . . . collaterally attack" his sentence, except for claims based on ineffective assistance of counsel or prosecutorial misconduct. (Id. at 5).

On September 18, 2007, this Court, Magistrate Judge David C. Keesler, conducted a plea hearing and Rule 11 colloquy. See (Id., Doc. No. 306: Rule 11 Hrg. Tr.). During the plea hearing, Petitioner swore that he understood the charge to which he was pleading guilty, as well as the maximum penalties he faced, id. at 4-5; that he was pleading guilty because he was in fact guilty of the drug conspiracy offense, id. at 8; that he understood that he was waiving his right to challenge his conviction and sentence in a post-conviction proceeding, id. at 12; that no one had threatened, intimidated, or forced him to plead guilty, id. at 13; that, other than the term of his plea agreement, no one had made him any promises of leniency or a light sentence or otherwise induced him to plead guilty, id.; that he was satisfied with the services of his attorney, id.; and that he was pleading guilty knowingly and voluntarily, id. at 13-14. At the conclusion of the hearing, Judge Keesler accepted Petitioner's guilty plea as having been knowingly and voluntary made. (Id. at 14).

In preparation for Petitioner's sentencing hearing, the probation office prepared a Presentence Report ("PSR"). (Id., Doc. No. 206: Presentence Report). Consistent with the parties' stipulation as to drug quantity, the probation officer began with a base offense level of 36. (Id. at 8). The probation officer also added four levels to Petitioner's base offense level pursuant to U.S.S.G. § 3B1.1(a), noting that Petitioner initiated and organized the effort to ship methamphetamine from California to North Carolina, controlled who received the shipments and how they were further distributed, and instructed individuals regarding how to address the payment to him. (Id.). After reducing Petitioner's offense level by three levels for acceptance of responsibility, the probation officer calculated a total offense level of 37, which, when combined with a criminal history category of I, yielded an advisory Sentencing Guidelines range of imprisonment of between 210 and 262 months. (Id. at 11). The probation officer also noted that, based on the drug quantity to which he stipulated, Defendant faced a statutory mandatory minimum of 120 months in prison. (Id.). See also 21 U.S.C. § 841(b)(1)(A).

In response to the PSR, Petitioner objected to the recommended role-in-the-offense enhancement and to the failure of the probation officer to conclude that the safety valve applied to permit the Court to sentence below the statutory mandatory minimum of 120 months. See (Criminal Case No. 5:06CR44, Doc. No. 217: Objection to PSR). The probation officer replied to Petitioner's objection by noting that, because the facts supported an enhancement based on Petitioner's role in the conspiracy as leader or organizer, he was not eligible for relief under the safety valve. (Id., Doc. No. 290 at 49-52: Sentencing Hrg. Tr.).

This Court, the Honorable Richard L. Voorhees, presiding, conducted Petitioner's sentencing hearing on October 7, 2008, sentencing Petitioner to 210 months' imprisonment, at the bottom of the advisory Guidelines range. (Id. at 57-58). Judgment was filed on October 17,

2008. (Id., Doc. No. 275: Judgment). Petitioner appealed, and on June 14, 2010, the Fourth Circuit Court of Appeals affirmed the judgment. United States v. Morrison, 382 Fed. App'x 348, 349 (4th Cir. 2010). The Fourth Circuit issued its mandate affirming this Court's judgment on July 6, 2010. (Criminal Case No. 5:06CR44, Doc. No. 310).

On September 19, 2011, Petitioner filed the instant motion to vacate pursuant to 28 U.S.C. § 2255, alleging an involuntary guilty plea because counsel advised him "that he would qualify for the safety valve departure" and because counsel failed to advise him that a four-point enhancement for role in the offense would disqualify him from receiving "the safety valve adjustment." (Doc. No. 1 at 4). Petitioner also alleges that he received ineffective assistance of counsel because counsel led him to believe that he would receive a safety valve adjustment at sentencing. (Id.). Finally, Petitioner alleges that the Government violated the terms of the plea agreement, but he does not provide supporting facts, stating that he would "gladly provide that information to the court under seal." (Id. at 5).

## II. FACTUAL BACKGROUND

Subsequent to a seizure of approximately one pound of methamphetamine in Alexander County, North Carolina, during October 2004, officers from the Alexander Sheriff's Office, Federal Bureau of Investigation (FBI), the State Bureau of Investigation (SBI), and the Caldwell County Sheriff's Office began investigating the distribution of methamphetamine to individuals in the Western District of North Carolina. (Criminal Case No. 5:06CR44, Doc. No. 206 at 5: PSR). Agents conducting the investigation learned that Petitioner, who grew up in Alexander County, North Carolina, and later moved to Los Angeles, California, found a source in Los Angeles for methamphetamine and began shipping one-pound quantities to his friends in North Carolina, namely, to co-defendants Phillip McKinney Stikeleather, Patrick Braswell, Craig

Leviner, Lisa Parlier, and Randy Deal. (Id.). Petitioner and Deal initiated and organized the endeavor to ship methamphetamine to North Carolina; however, shortly after the conspiracy began, Deal was phased out through attrition of his own customers and was also cut out after Petitioner formed alliances with Braswell and others. (Id.). The roles of the co-conspirators were fluid and changed with the periods of supply and demand. (Id.). Nonetheless, Petitioner initiated and organized the overall effort to ship methamphetamine from California to North Carolina; controlled who received the shipments and how the shipments were further distributed; and instructed various individuals regarding how to address the payments to him. (Id. at 7).

The methamphetamine was shipped to various addresses in North Carolina via Federal Express, United Parcel Service, and the U.S. Postal Service. (Id. at 5). Attempting to disguise the methamphetamine for transport using common couriers, Petitioner put methamphetamine in a glass Mason jar which he repeatedly dipped into wax to resemble a candle and, in some cases, he put the jar in a larger vase or other glass container and filled that with wax. (Id.). Further, in order to camouflage the true sender, Petitioner randomly chose addresses and company names, frequently using the name of law offices, that is, the sender's address appear to be a law office in California and the recipient's address would be a law office in North Carolina. (Id.). The addresses were legitimate; however, the law offices were unaware that their addresses were being used for this illegal activity. (Id.). In turn, the participants in North Carolina sent payments through common couriers, addressed to a "law firm" which was Petitioner's actual address in Los Angeles. (Id.).

Packages were also addressed to aliases including Craig Winter, Silvio Ducati, Jack, Cali and Gene. (Id.). Based on the seizures of methamphetamine by law enforcement together with shipping records and/or receipts from the involved common carriers, Petitioner was responsible

for a mixture and substance containing a detectable amount of methamphetamine of at least 5 kilograms but less than 15 kilograms. (Id. at 7).

At the commencement of Petitioner's sentencing hearing, he affirmed that he was pleading <u>guilty</u> knowingly and voluntarily and that he was, in fact, guilty of the drug conspiracy offense to which he was pleading guilty, in response to which the district court accepted Petitioner's plea. See (Id., Doc. No. 290 at 2-3: Sentencing Hrg. Tr.). Petitioner also affirmed that he had "carefully" reviewed his PSR with counsel, that he was "fully satisfied" with the services of his attorney, and that he had entered his guilty plea "freely and voluntarily," with an understanding of the charge to which he was pleading guilty and its possible penalties. (Id. at 2). With respect to Petitioner's objection to the PSR concerning his role in the offense, the Government presented the testimony of Special Agent Jeffrey L. Eddins with the North Carolina SBI, one of the investigating case agents. (Id. at 4). Agent Eddins testified that in October 2004, the Alexander County Sheriff's Department intercepted a package containing approximately one pound of crystal methamphetamine; that subsequent investigation indicated that Petitioner was the source of that methamphetamine; and that he was a leader, organizer, and supplier of the methamphetamine being sent from California to the Western District of North Carolina. (Id. at 4-5).

According to Agent Eddins, Stikeleather originally contacted Petitioner to receive methamphetamine and, pursuant to Petitioner's direction, set up a distribution network to ship the methamphetamine to third-party homes and businesses so that co-conspirators would not receive the methamphetamine at their homes. (Id. at 6). Law enforcement seized two shipments of methamphetamine while Stikeleather was Petitioner's point of contact. (Id. at 7).

Stikeleather was subsequently dropped as the initial point of contact for the

methamphetamine distribution, id. at 8, and in April 2005, about five months into the investigation, he agreed to cooperate with law enforcement, id. at 9. Agent Eddins testified that through Stikeleather, law enforcement learned that Stikeleather was replaced as Petitioner's point of contact by Patrick Braswel1, who had taken over the distribution from Randy Deal and Craig Leviner. (Id. at 9-10). Even though Stikeleather had contact with Petitioner, his intermediary had to be Braswell. (Id. at 8). Cooperating with law enforcement, Stikeleather made recorded telephone conversations with Petitioner concerning delivery of methamphetamine, initiated contact with Braswell at Braswell's house, and ultimately made two undercover purchases of methamphetamine through Braswell. (Id. at 8-9). Agent Eddins also testified that as the investigation progressed, law enforcement learned that a major part of the methamphetamine shipments involved delivery to locations that would not raise suspicion. (Id. at 10-11). Randy Deal recruited Craig Leviner, principal of the Alternative Learning Center, to receive packages at the school for subsequent pickup by Terry McFarland or Jeremy Murphy for ultimate delivery to Stikeleather or Braswell. (Id. at 10). From Skype chat records seized from Braswell's residence, law enforcement learned that Petitioner (1) gave instructions about how to send the methamphetamine via ground transportation; (2) instructed how to find different shipment addresses; (3) provided the code words to use for marijuana, cocaine, and methamphetamine; (4) asked Braswell how much he could use or sell each week; and (5) set up a credit system where Braswell would make payments towards a car for the drugs that were seized. (Id. at 11-12; 14).

Agent Eddins also described how the shipments were changed over the course of the Investigation. (Id. at 12). Through undercover conversations between Braswell and Stikeleather, Braswell unwittingly gave clues as to where the methamphetamine was going to be shipped so that law enforcement could interdict it before it reached the designated destination. (Id. at 12-

13). Importantly, Agent Eddins testified that the investigation revealed that Petitioner exercised decision-making authority to ship the methamphetamine during the course of the conspiracy from California to the Western District of North Carolina; that he participated in recruiting other individuals to find new addresses to which methamphetamine could be shipped without arousing law enforcement's suspicion, id. at 16; and that he played a major role in attempting to disguise the methamphetamine packages by putting wax around the methamphetamine, a false return address on the package, and a false name on the shipping address, and then sending the package, id. at 17-20. Agent Eddins further testified that Petitioner received money for the methamphetamine via wire, access to Braswell's credit, and via FedEx from others owing Petitioner for the drug. (Id. at 20-21). Finally, Agent Eddins testified that Petitioner provided no useful information to law enforcement. See (Id. at 37).

At sentencing, Petitioner's attorney argued that Petitioner served as nothing more than a supplier of the drugs; that just being a supplier was insufficient to establish that he was a leader or an organizer; and that with zero criminal history points and no leadership role, Petitioner was eligible for safety valve sentencing. (Id., Doc. No. 290 at 48: Sentencing Hrg. Tr.). Counsel asserted that safety valve eligibility would allow the Court to grant a downward departure below the mandatory minimum sentence "based on unrewarded substantial assistance." (Id.). Counsel further asserted that Petitioner should be given "super acceptance of responsibility" because "he was cooperative prior to being charged; that he made attempts to . . . capture his supplier in California; [and] that he was able to help the government learn that one of their informants was actually still dealing drugs while working as an informant." (Id. at 49). The Government countered that the facts clearly established that Petitioner directed the drug activities in the Western District of North Carolina; that he took affirmative steps to remedy lack of deliveries by

recruiting other individuals to replace those who failed, and that such activity continued "for quite a period of time." (Id.). Finally, the prosecutor pointed out that while Petitioner had been given an opportunity prior to indictment to work with law enforcement, id. at 50, and may have tried to provide substantial assistance, nothing Petitioner provided demonstrated the measurement for substantial assistance establishing an objective result in the actual arrest and prosecution of an individual "which we typically recognize substantial assistance," id. at 52.

After hearing testimony, as well as the arguments of counsel, the Court overruled Petitioner's safety valve objection, finding that Petitioner was a leader and organizer in the conspiracy based on the evidence. The Court specifically found that Petitioner "was someone who exercised management responsibility over a number of individuals primarily . . . in North Carolina with respect to the conspiracy. And there were five or more participants and he directed one or more of those, but over the course of the conspiracy he directed a number of them in ways that were critical to the operation." (Id. at 52). The Court then adopted the PSR for all purposes of sentencing, finding it reliable, credible, and accurate in determining the guideline level at 37, criminal history category I, and yielding a guideline sentencing range of 210 to 262 months. (Id. at 52-53).

Again, asserting that Petitioner was merely a supplier of drugs, counsel requested that the Court depart downwardly and sentence Petitioner to the mandatory minimum sentence of 120 months. (Id.). Given a chance to address the Court, Petitioner stated: "There isn't anything I can say. I'm guilty of what I did. I know what I did was wrong and there's no way I can justify what I did. So all I can say is I'm sorry and I'm really ashamed of what I did. I hate that I drug my family through this and I drug my father's name through the dirt. I have the same name as my father and — I am extremely ashamed of what I did. That's really all I can say." (Id. at 54).

Finally, the prosecutor stated that while the Court had the authority to vary a sentence under the Guidelines and could consider cooperation, Petitioner's cooperation was not a basis for a variance. (Id. at 55). The prosecutor acknowledged that Petitioner had provided information related to a cold murder case, but because that information "did not pan out" and Petitioner's cooperation had not yielded any results, the prosecutor stated that the Government would recommend a sentence at the bottom of the Guideline range. (Id. at 56). The Court then sentenced Petitioner to 210 months in prison. (Id. at 58).

Petitioner filed a pro se notice of appeal on October 14, 2008. Appointed counsel, Dennis Gibson filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and certified that there were no meritorious issues for appeal. Appellate counsel, however, raised as a potential issue whether Petitioner received effective assistance of counsel prior to plea and sentence. Petitioner did not file a supplement brief. Neither counsel nor Petitioner challenged the voluntariness of Petitioner's guilty plea or the sentence, or argued that the Government breached the plea agreement. On June 14, 2010, the Fourth Circuit affirmed Petitioner's conviction and sentence. See United States v. Morrison, 382 Fed. App'x 348, 349 (4th Cir. 2010). Importantly, the Fourth Circuit opined that based on a review of Petitioner's Rule 11 hearing, his guilty plea was knowing and voluntary. (Id. at 349).

### III. DISCUSSION

### A. PETITIONER'S CLAIM OF AN UNKNOWING AND INVOLUNTARY GUILTY PLEA AND BREACH OF THE PLEA AGREEMENT

Petitioner first alleges that his guilty plea was made unknowingly and involuntarily because counsel advised him that he would qualify for sentencing under the safety valve departure, the district court overstated Petitioner's roles in the offense for sentencing, and

counsel failed to inform him that an enhancement for a leadership role in offense would disqualify him for the safety valve departure. Petitioner did not raise this issue on appeal.

Claims that could have been raised on appeal, but were not, may not be asserted for the first time in a collateral proceeding unless the petitioner demonstrates cause excusing his procedural default and actual prejudice resulting from the alleged errors. In United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), the Fourth Circuit pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." Id. (citing United States v. Frady, 456 U.S. 152 (1982)); see also Bousley v. United States, 523 U.S. 614, 621 (1998) (failure to challenge a matter on direct appeal, absent certain compelling circumstances, bars collateral review of same). Petitioner failed to challenge the knowing and voluntary nature of his guilty plea on direct appeal, and he offers no evidence to establish cause or prejudice for such failure. Accordingly, this claim is barred.

> B. **PETITIONER'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL**

In Grounds Two and Three, Petitioner reasserts that his guilty plea was made involuntarily and unknowingly because counsel led him to believe that Petitioner would be sentenced under the safety valve departure and did not advise him that a four-point adjustment for his role in the offense would disqualify him from the benefit of the safety valve. (Doc. No. 1 at 5). Petitioner further claims that appellate counsel failed to challenge on appeal that Petitioner was improperly sentenced as a "leader or organizer" of the offense, speculating that had the role

enhancement been challenged, "the safety valve issue could have been subsequently addresse[d]" in his favor. (Id. at 4).

### 1. Ineffective Assistance of Counsel Standard

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-92 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697).

In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

Counsel is presumed to be competent, and a petitioner seeking post-conviction relief

bears a heavy burden to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id. A petitioner bears an even heavier burden where the claim of ineffective assistance of counsel follows the entry of a guilty plea. Where a defendant has pled guilty, he must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Additionally, because several of Petitioner's allegations challenge counsel's conduct at sentencing, in order to demonstrate an entitlement to relief on those matters, Petitioner must, at a minimum, allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

**2. Petitioner's Ineffective Assistance of Counsel Claims**

**a. Safety Valve**

Congress added the safety valve provision to the federal sentencing scheme in the Mandatory Minimum Sentencing Reform Act of 1994, 18 U.S.C. § 3553(f). This provision allows a district court to impose a Guidelines sentence that is below the applicable statutory mandatory minimum for first-time offenders who might otherwise be subject to mandatory minimum sentences. See 18 U.S.C. § 3553(f) (permitting the district court to "impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence" if the court finds that five requirements are met). To be eligible for sentencing under the safety valve, a defendant must meet the following five statutory requirements: (1) the defendant has no more than one criminal history point; (2) the defendant did not use violence or credible threats of violence or possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury, (4) the defendant

was not an organizer or leader of others in the offense; and (5) the defendant provided truthful information to the Government concerning the crime. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The burden is on the defendant to prove that he has met all five safety valve requirements. See United States v. Beltran-Ortiz, 91 F.3d 665, 669 (4th Cir. 1996).

Additionally, as the safety valve only permits a district court to impose a Guidelines sentence below the applicable statutory minimum, it has no effect if the bottom of the Guidelines range of imprisonment is higher than the statutory minimum, and the district court's explanation of the sentence makes clear that the court would not have sentenced the defendant below the mandatory minimum. See United States v. Solis, 169 F.3d 224, 226 (5th Cir. 1999).

Here, the record evidence contradicts Petitioner's assertions that he pled guilty based on counsel's false assurances that he would receive the safety-valve adjustment and that he would not be sentenced as a leader or organizer. As set forth above, the PSR clearly included a recommended four-level leadership enhancement and no recommendation for application of the safety valve. Petitioner objected to both. During his sentencing hearing, Petitioner explicitly affirmed that he had reviewed the PSR, that he had pled guilty knowingly and voluntarily, and that he was "fully satisfied" with his counsel's representation. (Criminal Case No. 5:06CR44, Doc. No. 290 at 2). Additionally, Petitioner stated under oath during his Rule 11 colloquy that no one had made promises of leniency in order to induce his guilty plea and that there were not understandings between the parties, except those explicitly set forth in the plea agreement. In light of his assurances to this Court that he had reviewed the PSR, and that he was fully satisfied with counsel, Petitioner's claim that counsel made promises inconsistent with what the PSR delivered are simply not credible.

Second, with respect to Petitioner's assertion that counsel promised him that he would get

the benefit of the safety valve and that the leadership enhancement improperly disqualified him, Petitioner was ultimately sentenced to 210 months in prison, 90 months over the statutory mandatory minimum, and this Court considered but declined Petitioner's request for a downward variance from that sentence, stating that the Court had considered the sentencing factors set forth in 18 U.S.C. § 3553(a) but had been unable to identify a factor supporting a sentence below the applicable Guidelines range. See (Id., Doc. No. 290 at 57). Even if Petitioner had not received the four-level leadership enhancement about which he also complains, his applicable Guidelines range would have been 135 and 168 months based on a total offense level of 33, still above the 120-month mandatory minimum. And, because this Court could not identify a factor that would warrant a sentence below 210 months, Petitioner has no argument that the Court would have sentenced him below 135 months. Even if the record did not preclude Petitioner's argument that counsel provided deficient representation in advising him that he would qualify for the safety valve, then, he cannot show that application of the safety valve would have resulted in a lower sentence, even if he had fully cooperated and even if the leadership enhancement had not disqualified him.

Finally, and fatal to Petitioner's claim, he does not allege that absent counsel's advice, he would have proceeded to trial instead of pleading guilty to Count One. Having shown neither deficient representation nor prejudice, Petitioner's claim on this issue fails.

**b. Issue on Appeal**

Petitioner next asserts that appellate counsel failed to raise on appeal that the Court improperly sentenced Petitioner as a leader or organizer of the offense. Petitioner's claim is not supported by the facts of record or case law. It is well established that counsel is permitted wide latitude in determining which claims are most likely to succeed on appeal and are therefore

worth bringing.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Fisher v. Lee, 215 F.3d 438, 457 (4th Cir. 2000).  Counsel is not required to assert all non-frivolous issues on appeal.  See Jones, 463 U.S. at 751-52.  Here, the facts in Petitioner's case amply supported the Court's finding that Petitioner served as a leader or organizer of a conspiracy involving more than five participants.  See U.S.S.G. § 3B1.1.  As this Court found, Petitioner "was someone who exercised management responsibility over a number of individuals primarily here in North Carolina with respect to the conspiracy.  And there were five or more participants and he directed one or more of those, but over the course of the conspiracy he directed a number of them in ways that were critical to the operation."  (Criminal Case No. 5:06CR44, Doc. No. 290 at 52).  Counsel vigorously advocated for Petitioner, but could not overcome the facts, and there is no reasonable likelihood that an appellate challenge to the leader or organizer enhancement would have succeeded.  Because Petitioner has failed to meet his burden, his claim of ineffective assistance of counsel on appeal fails.

### C. PETITIONER'S CLAIM THAT THE GOVERNMENT VIOLATED THE TERMS OF THE PLEA AGREEMENT

In Ground Four of his Section 2255 Motion, Petitioner alleges that the Government violated the terms of the plea agreement.  In support, Petitioner states that "[d]ue to the sensitive nature of this issue, [he is] purposefully not listing specifics but will gladly provide that information to the court under seal."  (Doc. No. 1 at 6).  According to the Clerk's Docket Sheet, as of this date Petitioner has not filed any documentation to support his allegation; therefore, Petitioner's admittedly unsupported claim constitutes a conclusory allegation.

### IV. CONCLUSION

In sum, for the reasons stated herein, the Court finds that Petitioner's claims in his

Section 2255 motion are without merit and the Court will, therefore, grant Respondent's Motion to Dismiss and dismiss the motion to vacate.

**IT IS, THEREFORE, ORDERED THAT:**

1. Respondent's Motion to Dismiss, (Doc. No. 10), is **GRANTED**, and the motion to vacate is **DENIED** and **DISMISSED** with prejudice;

2. The two Motions for Summary Judgment by Petitioner, (Doc. No. 12; 15); Petitioner's Motion for Preliminary Injunction, (Doc. No. 16); Petitioner's Motion to Compel Discovery, (Doc. No. 17), and Petitioner's Motion to Expedite, (Doc. No. 18), are all **DENIED** as rendered moot by the granting of Respondent's Motion to Dismiss.

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: March 18, 2013

Richard L. Voorhees
United States District Judge